HUGO HILLIG and AMANDA HILLIG, His Wife, Appellants, v. CITY OF ST. LOUIS, a Municipal Corporation, BAXTER L. BROWN, President of the Board of Public Service of the City of St. Louis, EDWARD E. WALL, FRANK J. McDEVITT, JOSEPH M. DARST and GEORGE W. CHADSEY, Members of and Constituting Board of Public Service of the City of St. Louis, and SKRAINKA CONSTRUCTION COMPANY, a Corporation.—85 S. W. (2d) 91.

Court en Banc, July 10, 1935.

*Williams, Nelson & English* for appellants.

*Charles M. Hay* and *E. H. Wayman* for City of St. Louis and others.

*Philip C. Wise* for Skrainka Construction Company.

PER CURIAM:—Appellants brought this suit in the Circuit Court of the City of St. Louis seeking an injunction to restrain respondents

294

from proceeding to award and perform a contract between the City
of St. Louis and Skrainka Construction Company for paving a public
alley in St. Louis and to restrain respondents from levying a special
tax against appellants' property on account of the proposed im-
provement. A general demurrer was filed to the petition by all the
defendants and this demurrer was sustained by the trial court. The
sole ground of the demurrer was that the petition failed to state
facts sufficient to constitute a cause of action against respondents.
Appellants having refused to plead further, final judgment was en-
tered dismissing the petition and from this judgment appellants
have appealed to this court. The petition alleges violation of the
Constitution of Missouri and of the United States and hence the
jurisdiction of this court attaches.

The contentions made by the parties in this court render it un-
necessary for us to set out in detail the averments made in the ap-
pellants' petition.. The petition charged that prior to awarding the
contract for the proposed improvement the city had passed a pur-
ported ordinance known as Ordinance No. 40179 which, among other
things, prescribed minimum rates of wages to be paid by contractors
doing work under contract with the city; that all bidders for the
work involved in the proposed improvement here in question were
notified, prior to submitting their bids for such work, that they would
be required to comply with the provisions of such ordinance and
that the ordinance would in terms be made a part of any contract
which might be awarded to the successful bidder for the work; that
respondent Skrainka Construction Company was the lowest bidder
for the work in question, and that the city has signed, or is about
to sign, a contract with that company for the work and that such
contract by its terms will require the company to comply with the
provisions of Ordinance No. 40179 before mentioned; that if such
contract is awarded Skrainka Construction Company and the work
therein provided for performed by said contractor that a special
tax will be levied against appellants' property and that such special
tax will purport to be a lien and cloud against the title of appel-
lants as owners of the property. As the present controversy is sub-
mitted here we understand that all parties concede that its proper
solution turns entirely upon the validity of Ordintnce No. 40179
heretofore mentioned. We understand also that it is conceded by
all parties that if the ordinance just mentioned is valid the judgment
of the trial court was a proper one and on the other hand if the or-
dinance is void the judgment below was erroneous and the cause
should be reversed and remanded.

The Constitution of Missouri has conferred authority upon the
qualified voters of the city of St. Louis to frame and adopt a
charter. The existing charter of the city of St. Louis was adopted
in 1914, and by virtue of its adoption it became and remains the or-

ganic law of the city. ■ In general the charter of a city bears the same relation to its ordinances that the Constitution of a state bears to its statutes. [Quinette v. St. Louis, 76 Mo. 402.] With some exceptions not pertinent here, the charter of the city of St. Louis requires that "all public work" shall be let "by contract to the lowest responsible bidder." [Charter of the city of St. Louis, Art. XXII, Sec. 4.] The challenged Ordinance No. 40179 was duly enacted by the board of aldermen of the city of St. Louis and was approved by the mayor on November 9, 1933. This ordinance in substance provided, among other things, that in the case of contracts awarded by the city or its Board of Public Service for the prosecution of public work on behalf of the city such contract shall provide that all employees of the contractor while engaged in the performance of the work shall be paid hourly wages at a stipulated rate. The ordinance specified the hourly wage to be paid in various crafts and trades, e. g., asbestos workers $1.25 per hour, concreter employed as foreman 90 cents per hour, blacksmiths $1 per hour, etc. Section 3 of the ordinance provided:

"If there be any craft or trade not included in the crafts or trades specified in Section 2 hereof, from which workmen or laborers are required to be used in the completion of any contract mentioned in Section 1 of this ordinance, for which such craft or trade there be in effect in the City of St. Louis at the time of advertising for bids for such work, wage rates established by agreement for such craft or trade between contractors and workmen for private work similar to the public work to be done by such craft or trade, such wage rates so established by contract or agreement are hereby declared to be the wages required to be paid by Section 1 (b) of this ordinance for such crafts or trades not specifically included in Section 2 hereof."

■ In this State it is well settled that charter provisions requiring that contracts for public work be awarded, upon a public letting, to the lowest responsible bidder are intended to secure free and unrestricted competition among bidders, to eliminate fraud and favoritism and to avoid undue or excessive cost which would otherwise be imposed upon the taxpayer or property owner. [Curtice v. Schmidt, 202 Mo. 703, 101 S. W. 61; Shoenberg v. Field, 95 Mo. App. 241, 68 S. W. 945; St. Louis Quarry & Construction Co. v. Von Versen, 81 Mo. App. 519; St. Louis Quarry & Construction Co. v. Frost, 90 Mo. App. 677; Muff v. Cameron, 134 Mo. App. 609, 114 S. W. 1125; Glennon v. Gates, 136 Mo. App. 421, 118 S. W. 98; Taylor v. Schroeder, 130 Mo. App. 483, 110 S. W. 26; Allen v. Labsap, 188 Mo. 692, 87 S. W. 296.] As a corollary to the elementary principle just stated our courts hold in general that where in the letting of contracts for public work restrictions or conditions are imposed upon bidders, which tend to increase the costs of the work

296

such conditions and restrictions are violative of charter provisions requiring that the contract for the work be let to the lowest responsible bidder. [St. Louis Quarry & Construction Co. v. Frost, 90 Mo. App. 677; Allen v. Labsap, 188 Mo. 692; 87 S. W. 296; St. Louis Quarry & Construction Co. v. Von Versen, 81 Mo. App. 519.] Applying the foregoing principles to the case before us we are clearly of the opinion that Ordinance No. 40179 is void because it is in contravention of the provisions of the St. Louis charter requiring that "all public work" be awarded by contract to the "lowest responsible bidder." The ordinance, if effective, permits bidding only by those contractors who agree to pay the prescribed minimum wages. Other contractors who might, if permitted, do the work for a lower price are prohibited from bidding or performing the work by the terms of the ordinance. Thus we have a situation where a contractor who can do the work equally as well, although cheaper, is excluded from bidding, while the ordinance clearly contemplates that the successful bidder will do the work at a cost which will at least equal the minimum amount specified for wages by the ordinance in question. Furthermore, since the ordinance in question requires all bidders for public work to pay a stipulated minimum wage to their employees it is clear that the ordinance imposes a limitation other than responsibility upon all bidders and hence the free competition prescribed by the charter is excluded and stifled. The respondent seeks to sustain the ordinance here in question by invoking the well-established principle that the specifications for work to be done under public competition in the execution of public improvements under city charters may in proper cases require the use of articles, apparatus or commodities held in monopoly if they are shown to be superior although to do so may result in excluding competition and increasing costs. [Swift v. St. Louis, 180 Mo. 80, 79 S. W. 172; Barber Asphalt Paving Co. v. Hunt, 100 Mo. 22, 13 S. W. 98; Wegman Realty Co. v. St. Louis, 329 Mo. 972, 47 S. W. (2d) 770.] But we think the principle just stated cannot properly be applied in the present case. In the execution of public projects some public authority is generally authorized to prepare specifications designating in detail the work to be done. The desired results could not be achieved—nor could any progress be made—if the public authority authorized to act was not accorded a proper and reasonable discretion to require the use of articles, apparatus or materials of superior quality, although held in monopoly. But it is clear that the exercise of the discretion to specify the use of articles held in monopoly in the execution of public work under city charters must be rather narrowly circumscribed. The public authority acting in the matter must exercise the utmost good faith, the article required to be used must be of superior quality and its use must be shown to have a tendency to improve the intrinsic quality

and character of the work to be done. In our opinion the principles just stated lend no support to the minimum wage ordinance here in question. There is no essential or necessary connection between the hourly wages paid by a contractor and the intrinsic quality and character of the work done. Furthermore the ordinance requires the payment of the prescribed hourly wages to all employees irrespective of their experience, skill or efficiency.

■ Respondents further contend that the ordinance here under consideration can be sustained as a proper exercise of the general police powers vested in the city by the provisions of its charter. The provision of the charter requiring "all public work" to be let by contract "to the lowest responsible bidder" is a specific requirement prescribing the course to be followed in awarding contracts for public work. The charter provision last mentioned itself relates to the exercise of police powers by the city and prescribes how the powers vested shall be exercised. We are of the opinion that the general police powers vested in the city by its charter cannot properly be so interpreted and applied as to modify or relax the specific requirements of the charter as to the letting of contracts for public work.

For the reasons heretofore stated we are constrained to conclude that Ordinance No. 40179 is void because of the minimum wage provisions contained therein. As this ordinance is void it necessarily follows that the contract awarded Skrainka Construction Company is also void and that any special tax sought to be imposed upon appellants' property for the paving of a public alley by virtue of work to be performed by the Skrainka Company under the purported contract with the Skrainka Company would also be void. Upon well-established principles it is clear that appellants, if they establish the essential facts set forth in their petition, would be entitled to the equitable relief they pray in their petition. The redress they seek is to enjoin the assessment of the purported special tax against their property, or if the assessment has been made to cancel the tax bill and thus remove any cloud upon the title to their property which may have resulted from the illegal assessment of the tax. [Verdin v. St. Louis, 131 Mo. 26, 33 S. W. 480; Albers v. St. Louis, 289 Mo. 543, 233 S. W. 210.] Many other interesting questions have been brought to our attention by learned counsel but as the views we have expressed are, in our judgment, determinative of the merits of this case we deem it unnecessary to discuss them.

For the reasons above set forth the case will be reversed and remanded. It is so ordered.